O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| HIBU, INC., F/K/A YELLOWBOOK INC. and YELLOWBOOK SALES AND DISTRIBUTION COMPANY, INC.<br><br>**Plaintiff,**<br><br>vs.<br><br>**MICHAEL A. LAWRENCE and F&B MANAGEMENT SERVICES, INC.**<br><br>**Defendants.** | Case No.: SACV 13-0333-DOC (JPRx)<br><br>**ORDER PARTIALLY GRANTING AND PARTIALLY DENYING SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF [50] [70]** |

Before the Court are cross-motions for summary judgment from Plaintiff Hibu, Inc., F/K/A Yellowbook Inc. and Yellowbook Sales and Distribution Company, Inc. ("Hibu") (Dkt. 70) and Defendant Michael Lawrence ("Mr. Lawrence") (Dkt. 50). After considering the motions, oppositions, replies, and all exhibits attached thereto, the Court hereby GRANTS partial summary judgment in favor of Hibu. Specifically, the Court finds that, as a matter of law, Mr. Lawrence is individually obligated to perform under the contract, he breached that contract, and the resulting damages add up to $383,686.60. However, the Court must deny

summary judgment on the issue of whether the contract requires Hibu to distribute the directory listings and, if so, whether Hibu has performed its obligations under the contract by distributing the listings.

## I. BACKGROUND

This is a fairly straightforward contract dispute. Hibu publishes and distributes the Yellowbook phone directory both in print and online. From August 2009 to February 2012, Hibu entered into 54 written contracts to advertise the floral business of F&B Management Services, Inc. ("F&B"). Hibu published those ads in its telephone directories, but F&B has failed to pay $383,706.60 due under those contracts.

Mr. Lawrence signed the contracts on behalf of F&B as the president of the company. However, the main dispute in this action is whether Mr. Lawrence also signed on behalf of himself, individually.

## II. Legal Standard

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is to be granted cautiously, with due respect for a party's right to have its factually grounded claims and defenses tried to a jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Celotex*, 477 U.S. at 323. When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact as to an essential element of its case. *See Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at

248-49. A "material fact" is one which "might affect the outcome of the suit under the governing law . . . ." *Id.* at 248. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible evidence identifying the basis for the dispute. *Id.* The court need not "comb the record" looking for other evidence; it is required only to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252.

### III. Discussion

#### A. Breach of Contract

In order to prevail on a breach of contract claim, plaintiffs must show: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 820 (2011) (citing *Reichert v. Gen. Ins. Co.*, 68 Cal. 2d 822, 830 (1968)).

##### 1. Existence of the Contract

The dispute centers on whether Mr. Lawrence was a primary obligor, a guarantor, or a party at all to the contracts.

"In interpreting a contract under California law, a court must first look to the plain meaning of the contract's language." *Guidiville Band of Pomo Indians v. NGV Gaming, LTD*, 531 F.3d 767, 787 (9th Cir. 2008) (citing Cal. Civ. Code §§ 1638, 1644). "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible." *Id.* (quoting Cal. Civ. Code § 1639). "[E]ven if the trial court personally finds the document not to be ambiguous, it should preliminarily consider all credible evidence to ascertain the intent of the parties." *Id.* (quoting *Appleton v. Waessil*, 27 Cal. App. 4th 551 (1994)). In such cases, the district court engages in a two-step process: "First, the court

1 provisionally receives (without actually admitting) all credible evidence concerning the parties'
2 intentions to determine 'ambiguity', i.e. whether the language is 'reasonably susceptible' to the
3 interpretation urged by a party.  If in light of the extrinsic evidence the court decides the
4 language is 'reasonably susceptible' to the interpretation urged, the extrinsic evidence is then
5 admitted to aid in the second step—interpreting the contract." *Id.* (quoting *Winet v. Price*, 4
6 Cal. App. 4th 1159 (1992)); *accord F.B.T. Prods, LLC v. Aftermath Records*, 621 F.3d 958, 963
7 (9th Cir. 2010).

  Mr. Lawrence argues that it is at least ambiguous as to whether the contract binds him individually as an obligor.  The Court disagrees.

  Overall, the contract is a simple form with spaces where parties can fill in basic information about, for example, the size of the directory listing, the classification of the listing, and the price to be paid for each listing.  Coleman Decl., Ex. A.  At the top, there is a section for "Customer Information," where "F&B Management Services, Inc." is listed with contact information. *Id.*  Throughout the contract, F&B is referred to as the "Customer." *Id.*

  The Court finds that the contract unambiguously binds Mr. Lawrence, in addition to F&B.  First, near the signature lines, there is a conspicuous box with the following text:

> THIS CONSTITUTES A CONTRACT FOR ADVERTISING WITH YELLOW BOOK SALES AND DISTRIBUTION COMPANY, INC. OR YP TEL, INC. IN THE NEXT EDITION OF THE ABOVE TELEPHONE DIRECTORY(IES) AND/OR FOR INTERNET SERVICES.  THE TERMS AND CONDITIONS SET FORTH OR REFERRED TO HEREIN AND ON THE REVERSE HEREOF, INCLUDING TERMS AND CONDITIONS SET FORTH AT WWW.YELLOWBOOK.COM ARE **AGREED TO BY CUSTOMER AND SIGNER.**

*Id.* (emphasis added).  The text makes clear that both F&B, the customer, and Mr. Lawrence, the signer, agree to the terms and conditions of the contract.

  Second, next to the box, the form contains three lines for names and signatures.  In short, this portion of the contract states: "This is an advertising contract between [Hibu] and F&B

Management Services, Inc. and [Mr. Lawrence's signature] Pres[ident][,]" followed by Mr. Lawrence's printed name and the date. *See id.* The conjunctive use of "and" makes clear that both F&B and Mr. Lawrence are bound by the contract.

Third, above Mr. Lawrence's signature is the bold text, "Authorized Signature Individually and for the Customer[.]" *Id.* Throughout the contract, F&B is referred to as the "Customer" and Mr. Lawrence signed individually. *Id.* So, again, this bolded text indicates that the authorized signature is for Mr. Lawrence, individually, and for the Customer, F&B.

The signature line also directs the signer to "Read paragraph 15 on the reverse hereof[.]" *Id.* On the reverse side of the form, Paragraph 15 reads:

> **15. Authority; Persons Obligated; *Signer Obligated*:** *The signer agrees* that he/she has the authority and is signing this agreement (1) *in his/her individual capacity*, (2) as a representative of the Customer, and (3) as a representative of the entity identified in the advertisement or for whose benefit the advertisement is being purchased (if the entity identified in the advertisement is not the same as the Customer or the signer). *By his/her execution of this agreement, the signer personally and individually undertakes and assumes, jointly and severally with the Customer, the full performance of this agreement, including payment of amounts due hereunder.*

*Id.* (emphasis added). Fourth, this section is boldly titled "Signer Obligated[,]" wherein Mr. Lawrence is referred to as the "Signer" throughout the contract. *Id.* Fifth, this section also explains that, "[t]he signer agrees that he/she has the authority and is signing this agreement . . . in his/her individual capacity[.]" *Id.* Sixth, and finally, the section ends by providing that, "[b]y his/her execution of this agreement, the signer personally and individually undertakes and assumes, jointly and severally with the Customer, the full performance of this agreement, including payments of amounts due hereunder." *Id.*

Mr. Lawrence relies almost exclusively on *Oncology Therapeutics Network Connection v. Virginia Hematology Oncology PLLC*, No. C 05-3033, 2006 U.S. Dist. LEXIS 5152 (N.D. Cal. Feb. 10, 2006) to argue that the contract is ambiguous. There, the court held that the single

relevant sentence—"The person signing below personally guarantees that Applicant will pay all amounts due under this Agreement and shall be responsible for such amount being paid"—was the "critical sentence" and was "poorly worded and could be read in two ways." *Id.* at *18. Namely, the court held that the signer could either be "promis[ing] to do everything he reasonably can to assure that the Applicant honors the commitments it makes" or that the signer "accepts a personal obligation to pay out of his own funds[.]" *Id.* at *18-19. Here, the contract makes plain—not once, but at least six times—the fact that Mr. Lawrence is individually obligated for the full performance of the agreement, including payments.

The Court is cognizant that at this first step of contract interpretation, "the court provisionally receives (without actually admitting) all credible evidence concerning the parties' intentions to determine 'ambiguity[.]'" *Guidiville*, 531 F.3d at 787. Here, however, the Court finds no credible evidence that affects the unambiguous language contained in the short, simple contract at issue in this action. Therefore, the Court can ascertain the "intention of the parties . . . from the writing alone[,]" *see id.* (quoting Cal. Civ. Code § 1639), and holds that, as a matter of law, the terms of the contract unambiguously oblige Mr. Lawrence to pay the fees associated with the publication of the listings.

Furthermore, because the Court holds that Mr. Lawrence is a primary obligor, not a guarantor, under the contract, the agreement is not subject to the statute of frauds. *See* Cal. Civ. Code § 1624(a). Therefore, the absence of signatures on some of the contracts do not invalidate them.

Accordingly, the Court grants partial summary judgment, holding that Mr. Lawrence is a primary obligor under the contract.

### 2. Hibu's Performance

Next, Mr. Lawrence argues that Hibu "has not provided sufficient evidence that it performed its contractual obligations" because "by definition, publication includes distribution." Opp'n at 19, 22. Hibu asserts that the contract requires only publication, not distribution. Reply at 4-5 n.2. The Court notes that Hibu only glancingly addresses Mr. Lawrence's argument. His argument is not that the term 'distribution' is explicitly mentioned

as one of Hibu's obligations; it is that 'publication' necessarily implies 'distribution,' at least with regard to this contract. The Court agrees with Mr. Lawrence.

The Court finds that the contract terms defining Hibu's contract obligations as "publication," are ambiguous. First, the colloquial meaning of "publication" does appear to anticipate public distribution. *See, e.g.*, Oxford English Dictionary (online ed.) (defining "publication" as "[t]he issuing of a book, newspaper, magazine, or other printed matter for public sale or distribution"). Second, in the related area of copyright, "publication" is defined as "the distribution of copies of a work to the public by sale or other transfer of ownership, or rental, lease, or lending." 17 U.S.C. § 101; *accord Embroidery Indus. v. Brasking, Inc.*, 60 Fed. Appx. 111, 113 (9th Cir. 2003). Third, given the language and purposes of the contract, it would be remarkable if Hibu could perform its end of the contract simply by printing Mr. Lawrence's listing in its phone directories, and then tossing those directories into an incinerator.

The parties give very little for this Court to determine whether Hibu has performed. Accordingly, the Court finds that there are two genuine issues of fact: first, whether the contract requires Hibu to distribute, as well as print, the telephone directories; and second, if so, whether Hibu satisfied its end of the contract by distributing those telephone directories.

The Court notes the absurdity of holding a jury trial to determine the question of whether the Yellowbook phone directories have been distributed in various parts of the United States. A simple declaration likely would have satisfied Hibu's burden of production. Nonetheless, the Court must deny summary judgment on the issue of whether Hibu has performed its obligations under the contract.

### 3. Mr. Lawrence's Breach

Hibu argues that Mr. Lawrence "was obligated to pay the amounts listed on the face of the contracts." Mot. at 7. Mr. Lawrence does not dispute this assertion.

Each contract expressly obligated Mr. Lawrence to pay the debts incurred under the contracts. Mr. Lawrence agreed to "personally and individually undertake[] and assume[], jointly and severally with the [F&B], the full performance of this agreement, including payment

of amounts due hereunder." Coleman Decl., Ex. A. Hibu provided $557,485.66 in advertising to Mr. Lawrence. Coleman Decl., Ex. D. He and F&B paid only $173,799.06. *Id.* Therefore, the Court finds that there is no material issue of fact that Mr. Lawrence breached the contract, and grants partial summary judgment.

### 4. Resulting Damages

Again, Mr. Lawrence does not dispute that there is a difference of $383,686.60 between what is owed under the contract and what has been paid. Therefore, the Court finds that there is no material issue of fact that there are $383,686.60 in resulting damages, and grants partial summary judgment

## IV. Disposition

For the reasons explained above, the Court GRANTS partial summary judgment on the following: Mr. Lawrence is individually obligated under the contract, Mr. Lawrence breached the contract, and Hibu is entitled to $383,686.60 in resulting damages.

However, the Court DENIES summary judgment on whether Hibu breached the contract. It appears to this Court that parties will need to go to trial on the remaining issues of whether the contract requires Hibu to distribute, as well as print, the telephone directories, and whether, if so, Hibu performed its end of the contract.

DATED:   February 3, 2014

*[signature: David O. Carter]*

DAVID O. CARTER
UNITED STATES DISTRICT JUDGE